We'll hear argument in the next motion, In Re. Walton, 1979. Thank you. Thank you. Go ahead. That was after the order of removal. Correct. So what is your basis for — how do we have jurisdiction here? That's the key issue, it seems to me. Yes, Your Honor. This is a motion to reopen and a denial of a motion to reopen. And it seems to me that Section 1252G channels our jurisdiction into basically just deciding cases upon a determination of removal or cases that are about to be removed. And there may be cases that allow us to have jurisdiction even following an order of removal for constitutional grounds. That's kind of an open question, but some of us are familiar with that question in Ragbir. So how do we have jurisdiction? That's a real question here. So, yes, that's very pointed. And Section 1252G does not nullify, Michael v. INS is holding, that the All Writs Act empowers Federal courts of appeal to stay orders of deportation. Doesn't 1252G, though, specify the motion under the All Writs Act as not providing jurisdiction? It does cite 8 U.S.C. 1651, which is the All Writs Act. And wasn't the statute amended significantly after the Michael decision was rendered? Yes, the Michael decision, the real act was 2005, which was after Michael v. INS. However, 8 U.S.C. 1252G does not consider prospective relief, and it does not restrict this Court's authority to issue writs in aid of its jurisdiction. But the question is what is its jurisdiction that we would be issuing writs in aid of if we don't have any? If we have some, then that's a different story. You have incidental authority and jurisdiction because of prospective jurisdiction. Okay. She's a U.K. citizen, right? Correct. So if she's removed to the U.K., is she foreclosed from litigating this matter after the BIA decides the question of the motion to reopen? Your Honor, excellent question. Thank you. The departure bar, 8 U.S.C. 8 CFR Section 1003.2D is the departure bar. And if she is with — if she is deported from the United States, her motions to reopen will be withdrawn. So this Court will be divested of its jurisdiction to hear the very, very important issue of whether — then she would face — then she would face deportation. She'd be — she'd be deported. But at that point, wouldn't we be — wouldn't it be more likely that we might have jurisdiction after these motions are out of the picture and a deportation has actually occurred? Because we're — it's then an order of removal that we would be reviewing, right? The removal order based from 2012, that's already established. There is this final removal order. Right. However, the channeling — the channeling method is completely divested from this Court if she is ordered removed. Let me ask another question. You represented that ICE has taken the position that a — that is — and that that position is that no pardon issued by Connecticut, by the Board of Pardons, which is the statutory administrative body that holds this power pursuant to gubernatorial delegation, can ever satisfy the Pardon Waiver Clause. I didn't see any documents saying that. What's the basis for that assertion? I was verbally notified in person, face-to-face, by not only a deportation officer, but by a trial attorney from the Department of Homeland Security. And I was told directly that they will not recognize the Connecticut pardon waiver because it is a legislative pardon, not an executive pardon. This seems a very important determination to have been made only verbally. I mean, is that the official position of the Department of Homeland Security? I mean, these sound like two people told you that it's either unlikely or will never happen, but you don't have anything in writing taking an actual position on that, do you? We have the briefing by the government, but also, Your Honor, we have motions to reopen pending with the Board of Immigration Appeals that can make that determination, who can adjudicate this specific issue. And, however, if — And have you filed for a stay with ICE? Yes, Your Honor, we filed for a stay with ICE. When was that? That was in March 2019. We've also filed a stay of removal twice. They denied that stay. It's not pending or anything. I was given a verbal face-to-face acknowledgement that they will not grant a stay. Not only that, they will never — I was told ICE will never, ever release her until she's deported. Is any of this in the record? No, Your Honor. These were made directly to me. But that was six months ago. Yes, Your Honor. So none of this has been confirmed in writing? You didn't write back to them and say, this will confirm you've told me X, Y, Z? Several things, Your Honor. I have a motion to reopen pending with the Board of Immigration Appeals. I have an emergency stay pending with the Board of Immigration Appeals. I have this action pending here. I have requested in writing that Ms. Guzzaro be released from detention. She has been detained for almost six months. That was denied. What was your emergency motion? Your emergency motion was based upon ICE's determination that — about the merits. Is that right? Are you talking about the motion to stay removal? Yeah. You said you filed a motion. Yes. Did you file a motion to stay removal with the BIA? Yes, Your Honor.  You didn't bring an action against ICE. I'm trying to think of a way, another way you might have litigated this that could have saved some — somebody might have jurisdiction. If we had a decision from the Board of Immigration Appeals, we would have a straight channeling preserving this Court's jurisdiction to hear that decision. Right. What I have done in the past, in addition to this action and the other actions, I have filed a mandamus action with the district court based on a pending U visa. I've been through this court with a temporary restraining order on this issue. I've tried to be creative and — Well, I think you have to be when you're faced with 1252G. Yes, Your Honor. Which is pretty absolute. That's the problem here. I mean, you know, one can easily see how the merits of this matter need to be determined. Right. Whether Connecticut — whether the position ICE is taking is correct or not, it's just a question of how to — how possibly we have jurisdiction. Well, I think you definitely have jurisdiction to preserve your prospective jurisdiction, your ability to maintain — But the prospective jurisdiction is contingent upon various things happening. It's not like it exists now, because 1252G prohibits a writ of mandamus from being, you know, from being a basis for jurisdiction. But it does not prohibit specifically an All Writs Act in the effort to preserve this Court's jurisdiction. And if I may, I'm way over time. Thank you. Thank you very much. Okay. Good morning, Your Honors. May it please the Court, I am William Tong. I'm the Attorney General for the State of Connecticut, appearing here as an amicus. Connecticut is here this morning to protect Ms. Walton, a Connecticut resident, from ICE's unlawful actions to deport her on the basis of criminal convictions for which she has been fully and unconditionally pardoned. And, Your Honor, as you said just now, the merits of this issue are so important that they need to be determined by this Court. And Your Honor asked — But on the other hand, the question of jurisdiction is really critical here. I mean, we have to address that question. Those are critical questions, Your Honor. But I'm here this morning to make the point that, apart from the jurisdictional questions, there's a fundamental question about the power of ICE to deport Ms. Walton, and she has not deported her. Without jurisdiction, we can't help you. Well, Your Honor — I understand that. Without jurisdiction, we can't help you and we can't help Ms. Walton. So that's what we have to wrestle with. I do understand that, Your Honor. And I think the fundamental problem here is that there's a jurisdictional trap for Ms. Walton. Because she has a pending motion to reopen, and whether ICE is correct or not, they're seeking to deport her, and they're saying, well, she can press her claims and make her arguments after she's been deported. Let me ask you this. Have you discussed with ICE or with the U.S. government whether the — wholly apart from litigation that's going on here, whether there can be a delay in deporting her? I mean, not everybody is deported immediately once an order of deportation is put in place. And so that would let some of this play out so that motions aren't pending and motions to reconsider aren't pending. I think that's the very purpose of the stay-in while we're here this morning, to let this play out before ICE and the Board of Immigration Appeals. But the question is you represent literally the State of Connecticut in this court. Yes, sir. And it seems to me that you have a little bit more weight potentially than the individual you, that is the State of Connecticut, the AG's office, have got a little bit more weight than the individual petitioner. Has there been any discussion with the government that in connection with this particular case, which is of great importance to the State of Connecticut, they should reconsider the decision not to grant a stay and to remove her immediately? Your Honor, apart from a short conversation this morning, I have not personally had those conversations, except I should note that I previously argued the same issue in the First Circuit about a month and a half ago in the case of Thompson v. Barr, where the very same issue in that case, the BIA — there is not the same jurisdictional question or procedural process. That's a very, very important difference, obviously. And has the State of Connecticut received any formal statement or communication from the government from any aspect taking the position that the pardons granted by the Board of Pardons in Connecticut will not qualify? I'm not aware of any direct communication on that issue. But what I should note is the BIA has taken the position that Connecticut pardons do not count for purposes of the pardon waiver clause in the Thompson v. Barr case. I just got another call late last week about a third case involving a Connecticut pardon where somebody has received a full, unconditional, absolute pardon. Has the State considered taking a declaratory judgment action? We are considering all of our options, Your Honor, but we're here this morning because of the imminent and immediate nature of Ms. Walton's potential removal. But, of course, as my colleagues are underscoring, we have a jurisdictional threshold question that is — that may tie us. If I may, Your Honor, with respect, I understand the jurisdictional question, but I think we have a larger due process problem because of this jurisdictional trap. You don't seem to understand, though, that without jurisdiction, we can't, in the most meritorious case in the world, take it — take action. But, Your Honor, I think we submit on behalf of the Petitioner that you have jurisdiction under the All Writs Act and to preserve your review of a very serious due process question, which is, if Ms. Walton is removed and then is required to make her claim on her motion to reopen abroad, unfortunately, once she leaves, the departure bar will divest this Court and Ms. Walton of any opportunity here in that case and for her to make her arguments before this Court. So it is a — it's a catch-22, right? If she leaves, then she gives up all her rights, and this Court has no opportunity because of the departure bar to revisit this question and determine whether ICE and the Board of Immigration Appeals ought to honor, as it should, Connecticut pardons under the Pardon Waiver Clause. And to not allow this Court that opportunity would fly in the face of 60 years of decisions by the Board of Immigration Appeals and Federal authorities that have held that pardons, like pardons issued by the State of Connecticut, by an executive branch agency, a Board of Pardons and Paroles, Connecticut, like five other states, does it that way for 60 years, the Board of Immigration Appeals. We may agree with you enthusiastically on the merits of your claim, but you did not brief extensively, really at all, in your amicus brief, the jurisdictional question. That's what we're tripping over here, is how to get — given the change in the law since the Michael decision in 1995 and the explicit stripping of jurisdiction by Congress of our court and limitation on — in the face of pleas for habeas corpus and under the All Writs Act. I mean, Judge Walker and his colleagues faced the habeas stripping provision in court recently, but the All Writs Act is in aid of other bases for jurisdiction, and it's difficult to get around the repeated references that Congress has made in Section 1252 to denying us the ability to act in certain circumstances, and particularly on a third, fourth motion to reopen that hasn't — where there is no final order. It's tricky to get to a decision that we do have jurisdiction. Your Honor, I do respect your concern about 1252g and the narrow jurisdictional issue posed. Do you have an argument that you could make on the jurisdictional point? I mean, that you haven't made in your brief because you addressed the merits as amicus. I think as to the narrow 1252g issue, we made those arguments in the brief. You're right, Your Honor, that we didn't brief them extensively because Petitioner's counsel did that. I do think, and I've emphasized this morning, that there's a jurisdictional trap that if she's removed, she won't be able to make her arguments because the motion to reopen will evaporate. And is there — just to reprise another question, is there — is there some other that may not be available to the Petitioner individually to circumvent what you've described as a jurisdictional trap? Well, Your Honor, I think I'm here this morning making a larger — Yeah. I hesitate to say jurisdictional argument, but a larger argument for the Court's exercise of its authority under the All Writs Act because this action by ICE offends Ms. Walton's due process rights. It also offends the State's equal sovereignty and also its Tenth Amendment rights. And those are larger issues that this Court ought to preserve. And you think that the All Writs Act should allow us to get to that issue? If the All Writs Act is to mean anything, it's to give this Court the power to vindicate weighty, weighty concerns like the Tenth Amendment and the equal sovereignty of the State of Connecticut.  Thank you. We'll hear from the government. It's not every day, Mr. Buchanan, that we hear about the Tenth Amendment, so why don't you address that a little bit? Yes, Your Honor. Chris Buchanan for the Respondent, William P. Barr, the Attorney General. Your Honor, the Court is right that the real question is jurisdiction. And although the Tenth Amendment is a — is a — is a weighty consideration and a serious legal issue, there is no exception in 242 for serious questions of law. And in order for the Court to even undertake that issue, as the Court rightly pointed out, it must first have a jurisdictional predicate, and that is spelled out with clarity in 242, which is conditioned — well, not conditioned, but explicitly excludes resort to the All Writs Act. And so the repeated references we have to the All Writs Act simply can't be reconciled with the express exclusion of resort to that. If the governor of Connecticut had issued the pardon, would the response of the federal government in this case be different? Your Honor, I — I cannot speak to that. And the reason is that there is no final order of adjudication by the Board that addresses that particular question. And that goes to the prematurity of the Court's interference in this case as it is currently postured. The Court's discussion about — with opposing counsel about verbal — verbal representations made by ICE just reemphasizes how premature it is for the Court to — Let me ask, though. You said in your — in your brief that if Ms. Walton is removed and the departure bar is triggered, she would still be able to petition from abroad, if I understood what you wrote correctly. That's correct, Your Honor. Could you explain why that is? I thought after — after removal, arguments made on motions to reopen or motions to reopen are deemed moot and withdrawn, what have you. And so I don't really understand why she would be able to pursue this very important question to her and to the State of Connecticut from a distance if she were removed. What — what path is available to her? Well, it — there are — there are multiple outcomes because all — each of which depends upon what is actually in the Board's denial of a motion to reopen, assuming that the Board does that. And because the Board has not taken action on that motion, it's still pending. We just don't know what the Board says. But you're saying that her removal would not trigger the Board's treating the motion to reopen as a withdrawal of that motion, is that right? Your Honor, if I can just clarify and make sure I understand your question, I rear-severed the jurisdictional link as to geographical location. She can file a petition from her view, whether she's in the United Kingdom or whether she's here, a stay of removal, the relief sought here, does not impact the Court's jurisdiction under 242A1. All that is required is that a final administrative order be issued and that she — and that she timely appeal. If the Board denies that motion to reopen and declines to exercise its sua sponte authority by invoking the departure regulation, that's a decision that she can appeal from. Review is limited in that case because that is a discretionary action by the Board because it sounds in the Board's regulatory authority, which is inherently discretionary. In another Mahmoud case, the Board — there is no authority that requires the Board to exercise its discretion in petitioner's favor. So were she removed, and were the Board to deny the motion to reopen, and were it to simply state nothing more than it declined to invoke its sua sponte authority or to invoke the departure bar, that the invocation of the departure bar or the declination to invoke its sua sponte authority would be presented for review before the Court. But precedent — precedent governs both of those reviews. But those reviews are very narrow and circumscribed. And so a stay of removal doesn't guarantee that the kinetic pardon — the Connecticut pardon issue actually is presented to the Court. Why would the — yeah, why would the Board deal with the departure bar? I mean, that's a separate — is a separate question, isn't it? It is, Your Honor. And I don't know that the Board would invoke the bar. But the departure bar speaks to circumstances where an applicant physically departs the country during the pendency of a motion to reopen. I don't know whether her administrative motion to reopen was a — she filed one, right? Administrative open to reopen. Yes, Your Honor. Was that pursuant to the regulation, you know, 1002.3? Or was it a statutory motion to reopen? Your Honor, I — my assumption is that it's a — it's pursuant to the regulation. And that comes from the petitioner's — the petition at page 8, where she states that her motion is untimely under the statutory framework, which imposes a 90-day deadline. And as a result, petitioner's reasoning, as I understand it, is that she fears if she is removed, the Board will invoke the departure bar and not reach the Connecticut pardon issue. And for that, she cites LUNA, which addresses — which affirms the Board's authority to invoke the departure board. With the regulation, it's — I'm sorry. You think it was done by — pursuant to a regulation? Yes, Your Honor. Yes. And the regulation states itself, if I'm reading it correctly, a motion — any departure from the United States occurring after the filing of a motion to reopen shall constitute a withdrawal of that motion. So why doesn't that end the proceedings if she is removed? And that would end — that would preclude our consideration of this important question that the State of Connecticut raises. Your Honor, a state of removal doesn't change that fact. That — because you can get to the same result whether she's in the United States or whether she's in the United Kingdom. But why was it even — But if she's removed, then the motion's withdrawn. Well, if she's removed, then it — It's not the same. Well, Your Honor, with respect, if she's removed and the departure bar is invoked, then the board does not reach the issue of the Connecticut pardon. If, in contrast, the State is imposed and she appeals from the United States and the board, which simply denies the motion to reopen based solely on an invocation of its sua sponte authority, which is inherently discretionary and addresses nothing further. And there's no positive address in the board's decision of the Connecticut pardon issue. In other words, no indication that the board has misperceived some underlying  Underlying this case, I mean, you have all the jurisdictional arguments, you know, kind of generally, it seems to me, that are very strong, but underlying this case is a fundamental question, and that is whether the Connecticut pardon is a constitutional     Connecticut hopes it would, and whether the effect of a pardon on the merits completely alters the outcome of this case on the merits. And that's the question that it seems to me that some court has to decide, and why wouldn't we be the ones to decide it, and why wouldn't we expect the government to cooperate with us in reaching that decision? Your Honor, all points well taken. However, the late, the late introduction of the Connecticut pardon in this case, I mean, literally it appears, as I read these pleadings, about 13 years from her first conviction, about 7 years from her second conviction, and at the very last hour when Why would that matter, though, as a matter of simple justice? I mean, she hasn't been deported yet. She hasn't left the country yet. She's been ordered deported. She hasn't left the country. And somebody else who's equally, who's in exactly the same position, but who's currently under an order of deportation would get relief, or at least get to litigate this question. Why shouldn't she be in the same position? Your Honor, at this late stage of the game, her only recourse is to the board's sua sponte authority under the statutory and regulatory framework that she exists, that she operates in. But the fact is that it's late stage of the game because the issue came, arose later on in the game. Well, but we don't, we know nothing about that. Consider, consider the alternative. Consider a Petitioner who presented a Connecticut pardon, which I understand has been, they've been doing for hundreds of years, earlier on in the process so that it was submitted to the board for adjudication, a full adjudication in the first instance. That's the vehicle that the Court needs in order to undertake the issue. And this, this case, as postured, simply is just the wrong vehicle because it's, it seeks a premature interference of the Court in clear violation of Do you know if there are other similar underlying issues relating to pardons in, around the country, or in the Second Circuit? Your Honor, I'm, I'm sorry, I'm not prepared to, I am not prepared on that point, but I can, I can make some inquiries and find out if that would be helpful. Would you provide us a letter by the end of this week on that? Yes, Your Honor, we'll do that. Thank you. And, and just, just that I answer the mail on that, the inquiry is petition, how many people are similarly situated to the Petitioner in terms of having a Connecticut pardon issued, but, and also removability based on those same convictions? Right. And if there are other states that have a similar framework where the, it's not the Governor issuing a pardon, but the legislature, and if that's pending before another Court. Or an administrative body appointed by the Governor, because I understand there's some differentiation potentially made between automatic legislative pardons and administrative pardons at the behest of the Governor that are discretionary and case by case. Because what you've indicated is that this very important issue may be percolating, and so we're not stripped, the courts, federal courts are not stripped of their ability, depending on the procedural posture of getting at this underlying potentially constitutional issue. Yes, that, that is true. However, under the All Writs Act, jurisdiction doesn't lie here. No, I understand that. I understand that. Your argument with respect to this case is that they pursued an avenue involving the All Writs Act, and therefore there is no jurisdiction. But there, as you, I think, suggested, there are other avenues. If it's less late in the game, so to speak, pursuant to which someone might actually be able to present the underlying issue of the effect of a pardon by a legislature or an administrative body. Is that right? What part of that is wrong, Mr. Buchanan? Well, Your Honor, when it sounds like it, what I cannot deliver is a government position on a board order that has not yet been issued, but what I can do is present information that we have that responds to, I think, similar to the situated petitions with respect to the Connecticut pardon. Do you have any idea whether the, she will be removed before the EIA determines the motion to reopen? Your Honor, I. Is it likely? Is it not likely? Is there anything you can do to ensure that she wouldn't be removed until that decision is made? Your Honor, she isn't removed right now pursuant to the temporary stay issued by the court in this case, or that stay to be lifted because the poor parents policy does not apply here. My expectation is that she would be removed in the ordinary course of the process of removal. It's a multi-step process with lots of small components and sort of all which have to happen sequentially in order to. And this court's forbearance policy, you think no longer applies? No, Your Honor, because there's no final administrative order. There's no basis of jurisdiction. And the petition 187306 was clearly frivolous. And in fact, the court dismissed it in April for that because there was no jurisdiction and nothing has changed. There's really also no way. I mean, I'm look, I'm not here to mediate, but there, there are no further discussions between the federal government and state of Connecticut about this issue in this case. Your Honor, that's, that is a broad, that is a broad brush to paint with the, I, I do not know what discussions have occurred between Connecticut and ice and D, which is the enforcement arm of DHS. And I, and likewise, the DHS also has a benefits arm. And, and so my office has been involved in the, in the Connecticut partnership on the subject of merits and other cases, but, but I can't provide a global. Do you think, just one last question by me. Do you think it would be fair to infer if the board denies the motion to reopen without any mention of anything, but a one line denial on the basis of this record, that it was disregarding as ineffective, the pardon that was issued by the state of Connecticut. Is there anything in the record that would preclude that in inference? Well, there's no, there is an administrative record because the case is immature. There is no positive authority that requires the board to exercise its discretion positively in petitioners. But if, I mean, pardon in the ordinary operation, the statute eliminates the basis for the removal order altogether. So wouldn't it be fair to infer that the board was declining to give effect to the pardon issued by the state? Well, that I think puts the cart before the horse with all respect, Your Honor, that assumes that, that the court takes Connecticut's position on the issue. And that may ultimately be where, where I'm just asking what would it be fair to infer from a one line denial? You hypothesize that that is one possible outcome. I don't think you can infer anything at all about the underlying merits of the Connecticut issue. I think, I think a one line denial simply means that the board, the board has chosen not to exercise its discretionary authority. There's no. So even in the context where the basis, the entire basis for the removal order is eliminated, you know, hypothetically by the issuance of a pardon. Your Honor, that adjudication has not happened yet. And while the Connecticut's is ably represented by the state attorney general here today, there is no board adjudication in this case. And that must happen first before we can talk about whether or not removability is dissolved or not. And so what we have is in, in left then the court is left really with just a removal order that is still valid from 2014. That has been petitioners repeatedly refused to abide by and is not the part of the country that she finds herself in a procedurally difficult posture with minimal room to maneuver. Thank you very much. We'll reserve decision.